NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 12-2128

———————

DUSTIN ALPHANSO PATRICK,
Appellant

v.

DEPUTY SHERIFF MICHAEL MOORMAN

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 11-cv-01908)
District Judge: Honorable Stewart Dalzell

———————

Argued May 21, 2013

———————

Before: RENDELL, GREENAWAY, JR., and GARTH, *Circuit Judges*.

(Opinion Filed: August 27, 2013)

Stephen D. Brown, Esq.
Karen C. Daly, Esq.
Samuel D. Harrison **[ARGUED]**
Allison Rovner, Esq.
Dechert
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104

*Counsel for Appellant*

Andrew B. Adair, Esq. **[ARGUED]**
Deasey, Mahoney, Valentini & North
103 Chesley Drive
Suite 101
Media, PA 19063-0000

Sheryl L. Brown, Esq.
Siana, Bellwoar & McAndrew
941 Pottstown Pike
Suite 200
Chester Springs, PA 19425

      *Counsel for Appellee*

_____

OPINION

_____

GREENAWAY, JR., *Circuit Judge*.

After Appellant Dustin Patrick robbed a bank, Appellee Deputy Sheriff Michael Moorman ("Deputy Moorman") apprehended him with his taser following a short foot chase. Suffering severe facial injuries and head trauma from the incident, Appellant filed a lawsuit against Deputy Moorman under 42 U.S.C. § 1983 for the use of excessive force in tasing him.

On May 26, 2012, the District Court granted summary judgment to Deputy Moorman. After partially excluding the testimony of Patrick's expert witness, the District Court found that Deputy Moorman's use of the taser was not excessive and that, even if it had been excessive, Deputy Moorman would still be entitled to qualified

2

immunity. For the following reasons, we will affirm.

## I. BACKGROUND

Since we write primarily for the benefit of the parties, we recite only the essential facts.

Around 10 a.m. on May 8, 2009, Patrick walked into the Wyomissing, Pennsylvania branch of VIST Bank and handed the teller a note demanding money. Patrick had used crack immediately before robbing the bank and had used heroin every six hours, cocaine every thirty minutes, and methadone twenty-four hours preceding the robbery. After Patrick fled the scene, bank employees notified authorities that Patrick had not displayed a weapon but had handed the teller a demand note. Between eighteen and thirty police officers responded to the call about Patrick's flight.

Deputy Moorman was in his patrol car with his partner, Deputy Keith Neiswender, when they received the radio broadcast about the robbery. The radio operator identified Patrick as a white male with a gray sweatshirt and a large tattoo on his neck. In responding to the scene, the officers also heard over the radio that Patrick had been wandering through public areas and passed a group of students from Berks Technical Institute without incident.

After receiving a tip from a nurse near the bank, Deputy Moorman and Deputy Neiswender left their car to search the Berkshire Commons parking lot for Patrick. At about the same time, Officer Barry Moyer and an unnamed officer arrived at the same

3

parking lot. When Deputy Moorman, Officer Moyer, and Deputy Neiswender split up, it was Deputy Moorman who encountered Patrick behind a dumpster in a parking lot. Deputy Moorman is five-foot-ten and 190 pounds, while Patrick is about six feet tall and 230 pounds. That day, Deputy Moorman was armed with a firearm, a taser, a collapsible baton, and mace.

Patrick disputes some of the facts of the chase that then ensued, so the following facts reflect Patrick's version of events insofar as it is supported by the record.[1] After Patrick emerged from the dumpster, Deputy Moorman immediately identified Patrick by his neck tattoo. Patrick was not armed and did not appear to be armed, although his clothes were ruffled and his shirt was not tucked. Deputy Moorman and Patrick were between six and eight feet apart when they first encountered each other. Deputy Moorman ordered Patrick to get on the ground but Patrick denies ever hearing anything. Officer Moyer then approached Patrick, who took off running when Officer Moyer got within ten feet of him.

As the chase began, Deputy Moorman was closest to Patrick, followed a few steps behind by Officer Moyer, and further behind by Officer Douglas Goeltz, another officer who came on the scene. Officer Goeltz was no less than thirty or forty feet from Patrick when the chase ended. Earlier, Officer Goeltz had radioed instructions to set up a

---

[1] Specifically, Patrick disputes whether Deputy Moorman warned him and whether there was a perimeter of officers on Berkshire Boulevard. For reasons discussed infra, these disputes do not affect our analysis.

perimeter of officers on Berkshire Boulevard to cut off Patrick at the intersection of Colony Drive and Paper Mill Road. The chase lasted only a few seconds and, according to Patrick, he only ran between four and six feet before being tased.

Deputy Moorman was gaining ground on Patrick as he was heading towards Berkshire Boulevard and he believed that Patrick might run into a medical office building that was in his path and open to the public. Deputy Moorman yelled "Taser, Taser, Taser" as a warning, but Patrick denies this fact. When Patrick was about thirty yards from the medical building, and ten to fifteen feet from Deputy Moorman, Deputy Moorman tased him. One taser probe struck Patrick in his back and one struck him in the back of his head. Deputy Moorman applied one five-second burst of his taser, which paralyzed Patrick's muscles and caused him to fall to the ground face first, without the ability to brace himself. As a result of the fall, Patrick suffered several broken bones, deep cuts to his face, and memory loss for two months.

In deploying his taser, Deputy Moorman's primary training came from the Berks County Sheriff's Department taser policy. The policy warns against aiming a taser at a suspect's head and against taser use if a running suspect might "fall from a significant height," "fall into the path of oncoming vehicles or into operating machinery," or "fall into water where the subject is likely to drown."[2] (App. 508 (Berks County Sheriff's Department Taser Policy § 3.1.19).) The policy also prohibits taser use when the suspect

---

[2] While one probe struck Patrick in the head, he offers no evidence from which it could be inferred that the taser was aimed at his head.

is merely exhibiting passive or non-physical resistance. (*Id.*) Despite these precautions, the policy condones taser use when there is an "immediate and articulable threat of bodily harm to any person" and where exigent circumstances make it unfeasible "to control the subject in some lesser, readily available and feasible manner, or use [] a lesser means of force". (*Id.*)

## II. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291.

We review a district court's decision to admit evidence for an abuse of discretion. *United States v. Benjamin*, 711 F.3d 371, 380 (3d Cir. 2013). We review a district court's grant of summary judgment de novo. *Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir. 2004). Summary judgment may only be granted if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences must be drawn in favor of the non-moving party. *Kopec*, 361 F.3d at 775.

## III. ANALYSIS

The three issues on appeal are 1) whether part of Patrick's expert's testimony was properly excluded by the District Court, 2) whether Deputy Moorman's use of force was

6

reasonable, and 3) whether Deputy Moorman is entitled to qualified immunity.[3]

## A. THE EXCLUSION OF EXPERT TESTIMONY

Patrick alleges that the District Court improperly excluded the testimony and report of Patrick's police expert, James E. Baranowski, under Federal Rule of Evidence 704. While Rule 704 allows experts to provide an opinion about the "ultimate issue" in a case, it prohibits experts from opining about the ultimate legal conclusion or about the law or legal standards. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006); *United States v. Leo*, 941 F.2d 181, 196-97 (3d Cir. 1991).

---

[3] Patrick contends that the District Court overlooked that several material facts were genuinely disputed and did not draw the inferences from those facts in Patrick's favor, but these facts were either not disputed or were not material. As to whether Deputy Moorman orally warned Patrick, Patrick did not affirmatively and unequivocally controvert Deputy Moorman's testimony to the extent necessary to put the fact in dispute. *See Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (noting that a lack of knowledge cannot create a genuine dispute of material fact where it is contradicted by reliable evidence). As to the nature of the police perimeter, there is no evidence that the perimeter was positioned to intercept Patrick, if there was even a perimeter established at all. Patrick has not provided any evidence that there were any other officers in the immediate vicinity of the chase on Berkshire Boulevard other than Deputy Moorman, Officer Goeltz, and Officer Moyer. As to whether the other available methods of force would be equally likely to cause injury, this was not a disputed fact but reflects the District Court's reasonableness analysis. More to the point, the District Court did not say that the alternatives were equally likely to cause injury, but only said that use of a taser was not so much more dangerous than the alternatives. *See Patrick v. Moorman*, 855 F. Supp. 2d 392, 403 (E.D. Pa. 2012).

The boundaries of Rule 704 are often hazy, so our Circuit has established that expert testimony becomes impermissible if the expert's opinion would interfere with the district court's "pivotal role in explaining the law to the jury". *Berckeley*, 455 F.3d at 217. In his testimony, Baranowski essentially opined that Deputy Moorman's actions were unreasonable and about what a reasonable officer would have done. In a § 1983 suit, "reasonableness" is practically interchangeable with "excessiveness", so Baranowski might as well have opined that Deputy Moorman's use of force was excessive.

Accordingly, in navigating this hazy Rule 704 line, the District Court did not abuse its discretion in excluding those parts of Baranowski's testimony which opined on the reasonableness of Deputy Moorman's actions.[4]

## B. EXCESSIVE FORCE

Under § 1983, the use of excessive force to effect an arrest violates a suspect's Fourth Amendment rights. *Graham v. Conner*, 490 U.S. 386, 395-96 (1989). Excessive force must be examined objectively since officers must use force that is objectively reasonable from the perspective of a reasonable officer. *Id.* at 396-97; *Kopec*, 361 F.3d at 776-77. The totality of the circumstances inquiry set forth in *Graham* identified specific

---

[4] Patrick claims that the District Court excluded the entirety of Baranowski's testimony, but the District Court expressly explained that it would only "ignore Baranowski's opinions as to what a 'reasonable officer' would have done under the circumstances." *Patrick*, 855 F. Supp. 2d at 402 n.9.

factors for courts to consider, including 1) "the severity of the crime", 2) the "immediate threat" posed by the suspect to officers or others, and 3) whether the suspect was "actively resisting arrest" or "evad[ing] arrest by flight". *Graham*, 490 U.S. at 396. Our Circuit has expanded this list of factors to include 1) whether the suspect is "violent or dangerous", 2) the "duration" of the force, 3) whether the force was used to make an arrest, 4) the "possibility" that the suspect is armed, and 5) the number of people with whom the police must contend. *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).

Things not to be considered include the officer's intentions and motivations, be they good or bad. *Graham*, 490 U.S. at 397. Critically, the objective analysis cannot be skewed by 20/20 hindsight since courts must appreciate that officers are forced to make split-second decisions. *Id.* at 396-97. Consequently, despite Patrick's contention, it does not matter whether Deputy Moorman was aiming for Patrick's head and Patrick's injuries have very little bearing.

Applied to Deputy Moorman, all three *Graham* factors indicate that Patrick's tasing was reasonable. First, as to the severity of the crime, robbing a bank is a very serious crime, particularly when done with a demand note. Second, as to the threat of danger, Patrick did pose a threat to surrounding bystanders. Even though there were no reports that he had acted aggressively or threateningly towards bystanders, no reasonable officer would assume that a bank robber is not dangerous. In addition, the fact that Patrick had not used a weapon during the robbery or his encounters with bystanders does not mean that he did not have a weapon or would not have acquired a weapon as the

9

chase progressed. Moreover, since Patrick fled to avoid arrest, Deputy Moorman could have reasonably assumed that Patrick might take other extreme measures, such as harming a bystander, to continue evading arrest. Third, as to Patrick's resisting arrest, he was clearly running to avoid arrest and was being completely non-compliant with Deputy Moorman. The moment he saw Deputy Moorman, he took off running and did not give Deputy Moorman the opportunity to use less intrusive means of apprehension.

The reasonableness of Deputy Moorman's tasing is further bolstered by his adherence to the Berks County Sheriff's Department Taser Policy. While Patrick was running across pavement, there was no risk of him falling from a significant height or into oncoming traffic or water. Although department policy required that Deputy Moorman resort to less forceful means if possible, it does not appear that Deputy Moorman could have reliably resorted to his mace, baton, or bodily force due to the distance between him and Patrick (which was ten to fifteen feet at the time of the tasing).[5] Patrick argues that tasing was unwarranted because Officer Goeltz and Officer Moyer could have assisted Deputy Moorman in tackling him, but Deputy Moorman was actually

---

[5] It does not seem possible for him to have maced Patrick effectively, both because he was ten to fifteen feet in front of Deputy Moorman and because he was not facing Deputy Moorman. While macing Patrick from behind might have irritated Patrick's sinuses and skin, slowing him down, there is no evidence that it would have immediately ended his flight. Aside from the mace, there is no evidence that Deputy Moorman could have used the baton to trip Patrick. Although Deputy Moorman was gaining on Patrick, there was still a ten-to-fifteen foot gap between them that would have prevented him from using his baton against Patrick's legs. While Patrick contends that Officer Goeltz testified that he could have caught up with Patrick and tackled him, that is only speculation and says nothing about Deputy Moorman's ability to tackle Patrick.

following department policy by using his taser in their presence. (App. 509 (instructing in § 3.1.21 that "[d]eputies should, when feasible, attempt to obtain sufficient back-up before deploying the Taser").)

Accordingly, Deputy Moorman's tasing of Patrick was not an excessive use of force and did not violate his constitutional rights.

**C. QUALIFIED IMMUNITY**

An officer is entitled to qualified immunity if he meets at least one of a two prong inquiry. *Reedy v. Evanson*, 615 F.3d 197, 223-24 (3d Cir. 2010) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The first prong of the qualified immunity inquiry asks if there is a constitutional violation, which we have just decided there was not. If there is a constitutional violation, the second prong of the inquiry asks whether the constitutional right was clearly established. *Kopec*, 361 F.3d at 776 (citing *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002)); *Reedy*, 615 F.3d at 223-24.

Based on the foregoing, we need not reach the second prong of the qualified immunity analysis since Patrick's constitutional rights were not violated. Deputy Moorman's actions were reasonable and, therefore, he satisfies the first prong of the inquiry and is entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the District Court's dismissal of

Patrick's claim on summary judgment.